# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Minnie Hendrickson, RN

_____

_____

Write the full name of each plaintiff.

_____CV_____

(Include case number if one has been assigned)

-against-

Maimonides Medical Center,Thomas Smith,CNO and Senior VP Operations, Paul Stuart, VP Human Resources, Steven Tyler, Assistant Nurse Manager . Tamar Mutz , Nursemaycr , Josephu Imperatre VP Emngncy Serie , Carol Kirlng, VP SurgiulServis

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?

☒ Yes      ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 3/24/17

## I.   PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Minnie                              Hendrickson RN
_____
First Name              Middle Initial        Last Name

964 49th Street Apt #F2
_____
Street Address

Brooklyn                    NY              11219
_____
County, City                State            Zip Code

(646) 932-0324              Mhendricksonmba@gmail.com
_____
Telephone Number            Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:    Maimonides Medical Center
                _____
                Name
                4802 Tenth Avenue 2nd Floor
                _____
                Address where defendant may be served
                Brooklyn              NY              11219
                _____
                County, City          State            Zip Code

Defendant 2:    Thomas Smith, Chief Nursing Office, Senior VP
                _____
                Name
                4802 Tenth Avenue 2nd Floor
                _____
                Address where defendant may be served
                Brooklyn              NY              11219
                _____
                County, City          State            Zip Code

Defendant 3:

Paul Stuart, Vice President Human Resources
_____
Name

4802 Tenth Avenue 2nd Floor
_____
Address where defendant may be served

Brooklyn                    NY                    11219
_____
County, City            State            Zip Code

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Maimonides Medical Center
_____
Name

964 49th Street Apt #F2
_____
Address

Brooklyn                    NY                    11219
_____
County, City            State            Zip Code

## III.   CAUSE OF ACTION

### A.   Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒   **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒   race:           *see attached
                    _____

☒   color:          * See attached
                    _____

☐   religion:       _____

☐   sex:            _____

☐   national origin: _____

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: **African American**

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☒ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: **PTSD,Depression**

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: **PTSD,Depression**

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.   Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐   did not hire me

☐   terminated my employment

☐   did not promote me

☒   did not accommodate my disability

☒   provided me with terms and conditions of employment different from those of similar employees

☒   retaliated against me

☒   harassed me or created a hostile work environment

☐   other (specify):    see attached

### B.   Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

see attached

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   09/08/2020

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☒   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   06/17/2021

When did you receive the Notice?   06/7/2021

☐   No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☐   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☒   direct the defendant to reasonably accommodate my disability

☒   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)
see attached

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 09/17/2021 | | | |
| --- | --- | --- | --- |
| Dated | | Plaintiff's Signature | |
| Minnie | | Hendrickson | |
| First Name | Middle Initial | Last Name | |
| 964 49th Street Apt# F2 | | | |
| Street Address | | | |
| Kings County | | NY | 11219 |
| County, City | | State | Zip Code |
| (646) 932-0324 | | mhendricksonmba@gmail.com | |
| Telephone Number | | Email Address (if available) | |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes   ☒ No

If you do consent to receive documents electronically, submit the completed form with your
complaint. If you do not consent, please do not attach the form.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

MINNIE HENDRICKSON RN,

                    Plaintiff, Pro Se

                                        INDEX NO: Civ. ---

                                        COMPLAINT AND

                                        JURY TRIAL DEMAND

Against

MAIMONIDES MEDICAL CENTER, THOMAS SMITH CNO AND SR VP,PAUL STUART VP HUMAN
RESOURCES, STEVEN TYLER ASSITANT NURSE MANAGER, TAMAR MOTOV, NURSE
MANAGER,JOSEPHINE IMPERATRICE VP EMERGENCY SERVICES, CAROL KIDNEY VP
SURGICAL SERVICES

                    Defendants.

## NATURE OF CLAIMS

Plaintiff Minnie Hendrickson, RN ["Plaintiff or "Ms. Hendrickson"], proceeding *pro* and brings this action

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e and Americans with Disabilities

Act of 1990 (ADA), 42 U.S.C. 12101 alleges as follows:

I  Minnie Hendrickson, plaintiff started my Nursing career at Maimonides Medical Center in November

of 1997. I arrived as a BSN prepared Nurse from SUNY Downstate College of Nursing. In 2008 I was one

semester away from my first graduate degree; I changed my status to per-diem in order to work during

the day as an Assistant Nurse Manager at another facility. As an African –American new Nurse I

experienced discrimination and had learned to ignore and overcome those situations over time. As I grew

in my career, gained expertise, knowledge and experience that was equally yoked as my white

counterparts, admittedly my tolerance for bigotry and overt racism has started to wane. I then became an

advocate and a whistleblower. Upon my return to Maimonides Medical Center fulltime as a staff nurse in

the Emergency Room in 2013, I felt "different".  A very rude awakening. It is safe to say that had never

worked under Nursing Leadership that were so racially insensitive where greater than 60 % of the entire

hospital staff as a whole are non-white.

Prior to current Covid-19 mask mandates/ requirements only individuals who opted to refuse the annual "Flu- Vaccine" were required to wear "a" mask during the entirety of "Flu- Season" while on duty. As per Maimonides Medical Center "policy", which usually was an email from the CEO and President Kenneth Gibbs regarding Flu –Season expectations. For the record, I have refused the Flu Vaccine annually dating back to 2013, therefore I worked during the Flu Season donning a mask as per hospital protocol. I purchased a cloth washable/reusable mask in middle October of 2019 at a discount store in black just to conceal my make-up smudges and to match my work approved jacket, which also was in black. Leading up to this incident, there had been a great deal of racial /religious division among staff members in the unit as per my observation and from my own correspondence with the Nursing Leadership team regarding scheduling favoritism. Needless to say the Emergency Department had a very palpable pulse regarding the adverse treatment of non- white staff by Nursing Leadership and even recurrent patients. It was customary for one particular patient to humiliate, berate and verbally accost non-white staff by calling them niggers and suggesting to them that they were incompetent and should "Go back to Africa!" As an RN in a busty urban Emergency Room it wasn't unusual to be verbally attacked on occasion, however for the entire summer of 2020 this particular patient was unrelenting in her racial attacks against the staff which created a hostile work environment for all. To add insult to injury our very own Nursing Leadership staff would encourage the patients behavior by allowing her to stay in the Emergency Room waiting area  by flashing Josephine Imperatrice's  business card indicating that she had "permission" to stay, eventfully antagonizing both in coming patients, their family members and staff throughout the day. When she was requested to leave, after her slew of racial indecencies all night, our very own Nursing Leadership team would purchase for and bring to her breakfast in most mornings from the deli across the street blatantly in the presence of the staff that she attacked during the night. After many months of disrespect with no intervention or reprieve insight some brave staff member's decided to email our ER department head Josephine Imperatrice regarding the patients' disruptive behavior. In November one particular RN on the night shift emailed her and asked her directly what she was going to do about the patients' racially biased and inappropriate behavior toward the non –white staff. She was told to secure a delegate for meeting regarding her email to Josephine. On the day of her meeting I called

Thomas Smith and left him a message that the staff in the unit were upset about the racial insensitivity in the unit. The morning of her meeting I accompanied her to Mr. Smith's office prior to the meeting seeking guidance and understanding as to the reason why a staff member would need a delegate about a very valid concerns that were in direct violation of Maimonides Medical Center HR Policy #039. He visualized us at the office entrance, but did not summon for us to speak to him. This day would later seal my fate. Subsequently, this Nurse was reassigned out of the Emergency Room and eventually terminated. It was an ominous sign of things to come.

I was singled out on January 7th, 2020 during the course of my duties as a Level I Trauma Nurse in the Emergency Department at Maimonides Medical Center by Steven Tyler for wearing my black surgical mask on duty. I had been donning my black mask for months leading up to this incident with numerous requests for me purchase individual masks for my colleagues. January 7th, 2020 change to trajectory of my life as an RN at Maimonides Medical Center. Mr. Tyler approached me at the Nursing Station and stated "You can't wear that black mask anymore" further elaborating "Oh I never had a Black one or Brown one" in a sexually suggestive manner in the presence of 2 other nurses on duty. I quipped back at Mr. Tyler "Oh it's a problem because the Black and Brown people are wearing a black mask?"  And inquired "When is Josephine leaving by the way?" because it was rumored that she was being moved due to her inability to maintain objectivity regarding the problematic patient and declining staff morale I did not address his secondary sexually inappropriate comment. I entered the trauma room and complied by taking of my black mask replacing it with a pink one. During this particular time, there were no guidelines as to any particular color of surgical mask to be worn during work; we all wore masks from home because they were easy to wear over our ears. The Emergency Room only had surgical masks that had to be tied in two places, which was inconvenient and not at all user friendly. The night was uneventful after that, I was not summoned to the office nor emailed that I had been insubordinate. I left that morning not knowing that Mr. Tyler had made a big deal about our exchange, even though he was highly inappropriate to me as a Nurse Leader. Upon my return to duty that next shift things had changed. Thomas Smith was noted to be looking throughout the Emergency Department for me during my shift while in my assigned area. He was reportedly asking everyone where I was assigned, by the time

he arrived in my assigned area I had already gotten wind that I was be sought after by the CNO. Mr. Smith approached me in the open triage area and stated that "I need to meet with you in the morning after work regarding your exchange with Steven" I said why? "I said to him, oh you don't like that I said he was only asking about the black and brown people with the black masks??" He said yes and other things. He was in my face and visibly annoyed, he went on to say that he arranged for my union Representative to be present as well. It was a horrible menacing experience. I was assigned to the triage area where I have to be the gatekeeper for patients who are in need of emergent medical care, and approach by the CNO about an unscheduled meeting regarding something that I felt was finished on the previous shift. It was unprecedented that Thomas Smith would approach any nurse in this manner over a statement, but not unusual because Thomas Smith and Steven Tyler had a close relationship. In the grand scheme of things, the entire hospital had pockets of issues that I am pretty sure needed Mr. Smith's attention and direction, yet he chose to make an example out of me for being outspoken about the persistent racial discord that existed in our department.

I met with Mr. Thomas Smith, Tamar Motov ER Nurse Manager, and Magda Guillaume our New York State Nurses Association Representative. Nursing Representative on January 9th, 2020 approximately 8 AM. It was apparent that I was going to be reprimanded by Mr. Smith for making my statement to Steven. I was given the opportunity to speak and it was at this point that I outlined years of discriminatory and racially insensitive treatment in the ER, I cried because I was very frustrated and tired from working an 11.5 hour shift and then dragged into a tentatively punitive impromptu meeting. I mentioned that Steven was inappropriate to me and was promised that we would meet to discuss thing further. Steven never appeared for any future meetings.  I let all of them know that a great many of the staff looked to me for guidance/advice/ support due to the poor morale in the unit and that I too receive therapy to manage my stress. He told me that I should "start thinking about places I would like to work." I told him I had no problem performing my duties in the ER as a RN and had not planned on transferring. Mr. Smith was not please that I told him the ER fostered an environment where it was an acceptable norm to be called a nigger, or have co –worker call us monkeys in Russian, or be disrespected by the Nursing Leadership. He was upset because Steven told him I asked when Josephine was leaving the ER

and wanted to ensure that nothing else racial was exposed, I left the meeting feeling uncomfortable because we were to reconvene in the next week. On January 15th, 2020 I received a phone call from Mr. Smith regarding rescheduling the meeting for that day to Friday. On Friday January 17th, 2020 I meet with Mr. Smith who stated that I he "wanted to ensure that I wasn't stressed". The tone of meeting became centered on my mental health, which up until the initial meeting was never an issue or talking point. I was offended immensely, Steven Tyler ignited a firestorm of controversy by intentionally picking on me. Not only did he discriminate against me, I felt he comments we in direct violation of our own hospital policies, but he was not reprimanded. I finally reached out Paul Stuart the VP of HR to request a meeting with him regarding the situation via personal email on January 20th, 2020. I met with Michelle Baptiste who was the HR Complaint Officer and Mr. Stuart on January 23rd, 2020 at 4p in the HR conference room. I was very upset that one verbal exchange resulted in so much confusion. I had not done anything wrong and was villainized in a manner which a white nurse would not have been. I expressed my concerns and fears that I was going to be taken out of the Emergency Room for no reason. It was a huge disruption in my life and created a great deal of emotional stress. I informed both HR officers that I would pursue the matter if I were to be moved out of the ER. I expressed that Mr., Smith mentioned my Apartment (I live in Maimonides Medical Center Housing since 1999 with my son's) during the first meeting which was highly inappropriate and viewed as a threat. I felt as though something would be done to mediate and return me back to my normal routine after meeting with HR. Subsequently, I was taken off the schedule in the ER and told I would be paid by Mr. Smith for the days that I were to work in the ER. I was never told why I couldn't work, then I was given a letter that I would be moving to the Ambulatory Surgery Unit (ASU) working on the day shift from 9am to 5:30pm due to the ER's "stressful environment" without my consent, request, suggestion nor affirmative buy-in. As indicated before, I had weekly therapy sessions in the morning, because I worked the night shift (scheduling my therapy sessions was never an issue). I was pushed into a Nursing Orientation on a 7.5 hour day shift and have been in the ASU which I was told "could not accommodate my medical needs" as per Carol Kidney, VP Surgical Services. I had no representation from the hospital nor my labor union 'NYSNA during this time. I became severely depressed, almost suicidal as expressed to Magda Guillaume and Nancy Hagans my

NYSNA union representatives. The actions of all parties named were in violation of my Civil Rights. It took months of emails and meeting with the hospital's counsel to finally secure an 11.5 hour shift in order for my psychotherapy sessions to resume. To date, these sessions have been not been as effective as prior to my re-assignment; I am still adjusting to my new forced work environment. My intentions were to become an Emergency Room Team leader and obtain my Trauma Nurse Certification. All of these opportunities have been maliciously taken away from me due to Thomas Smith's actions and the inept and clearly biased Human Resources Department headed by Paul Stuart. I was never afforded due process in this matter. I am still waiting on my grievance hearing from HR regarding this forced reassignment. Maimonides Medical Center failed me, it is a hurt that I carry around with me each and every day since January 7th, 2020. My 2 most triumphant moments were last year on March 23rd, 2020 when I requested to return to the Emergency Room during the height of Covid-19 to help out by Josephine. (I literally was summoned from the classroom setting in which the perioperative employees were being briefed on our new Covid-19 transitional roles to return to the Emergency Room to work.) I was greeted with an email sent to all of the Emergency Room staff thanking a group of former ER nurses from various departments for returning. The unfortunate thing was that Steven Tyler was now working on the day shift and was obviously not pleased to see me return. I suspect he contacted his buddy Thomas Smith who abruptly put an end to my ER return. I was sent back to my department after 4 hours of deployment in the ER trauma room on this day. The idea that I was "stressed" in the ER couldn't be put to shame so easily by my requested return to work; it was clear that Josephine nor Tammy didn't share that sentiment and were pleased to have me back as strong resourceful critical care nurse during this dire time. Steven Tyler's bigotry, insecurity and close personal connection to Mr. Smith has been the fuel in this conflict. Upon my return I opted to work in the Covid ICU's voluntarily after my unit closed its surgical services and moved to an off-site facility. I worked in ALL of the Covid-19 ICU's and MICU from March 23rd, 2020 to June 18th, 2020 successfully and without incident. I have PTSD and Depression since 2019. It has never impacted my work. If even mentioned in an email the effects of working in a trauma ER without the required support may lead to NURSE BURNOUT, I HAVE NEVER EXPECTED AND/OR REQUESTED ANY ADA ACCOMDATIONS UNTIL I WAS UNABLE TO RECEIVE MY THERAPY. It

was deceitful for Thomas Smith to reassign me under the guise that I was "stressed in the ER" and only a cover for both Steven Tyler and his own racial bigotry towards me. I have worked the night shift from 2013 and it has been very difficult to adjust to working during the day, I have gained 30lbs and became borderline hypertensive due to the abrupt change in my lifestyle pattern and norms. This is a slap in the face for the 24 years of loyal, skilled and professional service have given to Maimonides Medical Center as a Critical Care Nurse. I am submitting my complaint in an effort to prevent another employee from having their Title VII rights violated in this sinister calculated manner. No employee should be at the mercy of bigoted individuals to play judge and jury with the trajectory of their career, mental health and ultimately their professional reputation. This is an action to remedy violations of the rights of Ms. Hendrickson] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e and Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12101 which occurred at her place of employment as a Registered Professional Nurse at Maimonides Medical Center.


JURISDICTION and VENUE

The jurisdiction of the Court is invoked pursuant to 28 U.S.C § 1343 (a):

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1)To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2)To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3)To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

The unlawful employment practices alleged herein were committed in whole or in part in New York.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the defendants do business in Brooklyn, New York and some of the acts of discrimination and retaliation occurred in New York.

## PARTIES

Since November 11, 1997, I Minnie Hendrickson have been employed by Maimonides Medical Center.

Plaintiff served as a Registered Professional Nurse in the Emergency Room from December 1st, 2013 to January 16th, 2020 when I was reassigned from my employment duties by Maimonides Medical Center. Plaintiff resides at 964 49th Street Apartment #F2, Brooklyn, New York, 11219

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e and Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12101 herein, Minnie Hendrickson is an "employee" of Maimonides Medical Center within the meaning of 42 U.S.C. §§ 2000e.

Maimonides Medical Center is a New York State non-profit, non-sectarian Hospital.

Maimonides Medical Center is a 711 bed comprehensive treatment and academic medical center in Borough Park Brooklyn. Maimonides Medical Center has, and at all relevant times had, its principal place of business at 4802 Tenth Avenue.

At all times relevant herein, Thomas Smith, has been employed by Maimonides Medical Center, most recently as its CNO and Senior Vice President.

As Ms. Hendrickson's Chief Nursing Officer during most of her employment at Maimonides Medical Center, Thomas Smith had the power to make personnel decisions regarding Ms. Hendrickson's employment as the head of the entire Nursing Department within the organization.

At all times relevant herein, Paul Stuart, has been employed by Maimonides Medical Center, most recently as Vice President of Human Resources.

As Ms. Hendrickson's Vice President of Human Resources during most of her employment at Maimonides Medical Center, Paul Stuart had the power to make personnel decisions regarding Ms. Hendrickson's employment as the head of the Human Resources within the organization.

At all times relevant herein, Steven Tyler, had been employed by Maimonides Medical Center, most recently as its Emergency Room Assistant Nurse Manager until June of 2020

As Ms. Hendrickson's Assistant Nurse Manager during most of her employment at Maimonides Medical Center, Steven Tyler had the power to make administrative decisions regarding Ms. Hendrickson's employment as a Nurse Leader in the Emergency Room within the organization.

At all times relevant herein, Tamar Motov had been employed by Maimonides Medical Center, most recently as its Emergency Room Nurse Manager until February, 2020

As Ms. Hendrickson's Nurse Manager during some of her employment at Maimonides Medical Center, Tamar Motov had the power to make administrative decisions regarding Ms. Hendrickson's employment as a Nurse Leader in the Emergency Room within the organization.

At all times relevant herein, Josephine Imperatrice, has been employed by Maimonides Medical Center, most recently as its Vice President of Emergency Services.

As Ms. Hendrickson's Vice President of Emergency Services during most of her employment at Maimonides Medical Center, Josephine Imperatrice had the power to make administrative and personnel decisions regarding Ms. Hendrickson's employment as one of the Department Heads and Nurse Leader of the Emergency Room within the organization.

At all times relevant herein, Carol Kidney has been employed by Maimonides Medical Center, most recently as its Senior Vice President of Surgical Services.

As Ms. Hendrickson's Senior Vice President of Surgical Services during most of her employment at Maimonides Medical Center, Carol Kidney had the power to make administrative and personnel decisions regarding Ms. Hendrickson's employment as one of the Department Head and Nurse Leader of the Surgical Services within the organization.

At all relevant times herein, defendant was an "employer" of Minnie Hendrickson within the meaning of 42U.S.C. §§ 2000e et seq.

## FACTS

Ms. Hendrickson alleges that her Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e rights were violated when she was discriminated against due to her African -American heritage for wearing a black colored surgical mask on duty at Maimonides Medical Center on January 7th, 2020.

Ms. Hendrickson alleges her Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12101 rights were violated when she was reassigned out of her respective Nursing Unit ( Emergency Room) and forced into the Ambulatory Surgery Center based on her Diagnosis of PTSD and Depression.

Ms. Hendrickson alleges that her Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e has been violated as she was subjected to workplace harassment, a hostile work environment and retaliatory attempts to discredit and penalize her due to her whistleblowing efforts at Maimonides Medical Center regarding her employment dispute(s) with Thomas Smith ,Paul Stuart and Steven Tyler.

## PROCEDURAL REQUIREMENTS

Ms. Hendrickson has satisfied all procedural requirements prior to commencing this action and is in possession of EEOC Right to Sue letter.

## AS AND FOR A FIRST CAUSE OF ACTION

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e

Ms. Hendrickson alleges she was discriminated against by race and color by Maimonides Medical Center.

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12101

Ms. Hendrickson alleges she was discriminated against due to history of PTSD and Depression by Maimonides Medical Center.

Ms. Hendrickson alleges she has been subjected to workplace harassment and retaliation from Nursing Leadership because of her exposure to the CEO and Upper Leadership about her reassignment by Thomas Smith and all events since.

By engaging in the foregoing conduct, Maimonides Medical Center has violated Ms. Hendrickson's Federal and State rights under New York State law.

By acting as aforedescribed, Maimonides Medical Center acted with malice and reckless disregard for Ms. Hendrickson's Title VII and ADA rights, causing Ms. Hendrickson adverse health conditions, unresolved and increased mental health issues, professional and personal humiliation, delayed professional development, damage to professional reputation, undue stress to self and family including financial strain and entitling Ms. Hendrickson to damages that are currently undetermined

## PRAYER FOR RELIEF

WHEREFORE, Minnie Hendrickson prays that this Court enter judgment against the Maimonides Medical Center as follows:

(a) under the First Cause of Action, ordering the individual defendants to remedy by remittance of maximum amount of award entitled to.

(b) under each Cause of Action, granting any injunctive relief as may be appropriate;

(c) under the each Cause of Action, awarding plaintiff costs and, under the First Cause of Action, reasonable attorneys' fees; and directing such other and further relief as the Court may deem proper.

(d) restoration of right to transfer back into the Emergency Room including consideration for  position of Emergency Room RN Team leader without prejudice and removal of any/ all past disciplinary actions in HR personnel file to make her whole.

JURY DEMAND

Plaintiff demands a jury of six persons on all claims stated herein.

Dated: September 17th, 2021

COUNTY OF NEW YORK

MINNIE HENDRICKSON, RN

I am the plaintiff in this action. I have read the foregoing complaint and know the content thereof; the

same is true to my knowledge, except as to matters therein stated to be alleged upon information and

belief, and as to those matters I believe them to be true.

Minnie Hendrickson, RN

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Minnie Hendrickson-james**
**964 49th Street Apt F2**
**Brooklyn, NY 11219**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2020-04131** | **Perry Canales,**<br>**Investigator** | **(929) 506-5318** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Digitally signed by Perry A.
Perry A. Canales  Canales
Date: 2021.06.17 13:07:18 -04'00'  For

6/17/2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Issued)*

cc:  **Paul Stuart**
**Human Resources Director**
**MAIMONIDES MEDICAL CENTER**
**4802 Tenth Avenue**
**923 48th Street, 3rd Floor**
**Brooklyn, NY 11219**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was issued** to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*